Affirmed, in part; Reversed and Remanded, in part; Reversed and
Rendered, in part; Opinion of March 2, 2006, Withdrawn and Substituted with a
Corrected Opinion filed March 9, 2006









 

Affirmed, in part; Reversed and Remanded, in part; Reversed
and Rendered, in part; Opinion of March 2, 2006, Withdrawn and Substituted with
a Corrected Opinion filed March 9, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00953-CV

____________

 

DAVID PIPER, Appellant

 

V.

 

GERALD EDWARDS, Appellee

 



 

On Appeal from the County
Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 785,809

 



 

CORRECTED  
MEMORANDUM   OPINION

David Piper (APiper@) files this
restricted appeal after the trial court granted a default judgment in favor of
Gerald Edwards (AEdwards@).  In two issues, Piper challenges (1) whether
the trial court should have dismissed Edwards= case for want of
prosecution when Edwards failed to appear for mediation and (2) the legal and
factual sufficiency of the evidence to support the judgment on grounds of
breach of contract, conversion, and fraud. 
We affirm, in part; reverse and render, in part; and reverse and remand
to the trial court, in part, to determine damages.








On August 31, 2001, Piper and Edwards
entered into a handwritten contract to Atrad[e] Texas
motor vehicles.@ 
Piper owned a 1970 Chevrolet Chevelle LS6 and Edwards owned a 1964 Dodge
330 sedan.  Piper agreed to accept the
Dodge not in running condition, unpainted and partially disassembled, and Edwards
agreed to let Piper complete work on the Chevelle Ain a timely manner
at [the] expense of David Piper.@[1]  Edwards also agreed Ato assist in some
minor capacity@ in Aassembly and
detail work as time permits.@  

The two men exchanged the unsigned titles
of their respective vehicles and Edwards awaited Piper=s completion of
repairs on the Chevelle.  At some point,
Edwards gave Piper approximately $30,000 in car parts for the 1964 Dodge.  He did not do this as part of the original
bargain, but because Piper Akind of insisted
on it@ and Ato motivate
[Piper] to go and finish [the Chevelle].@  After several unsuccessful attempts to obtain
the Chevelle, Edwards sued in January of 2003, for breach of contract,
conversion, quantum meruit, promissory estoppel, and fraud.[2]  Piper filed a general denial, but failed to
appear for trial.  The trial courtCin a final
judgment silent as to its groundsCawarded Edwards
$100,000 in actual damages, $40,000 in punitive damages, and $40,000 in
attorney fees.  The court also signed a
turnover order requiring Piper to return the car parts.  Piper filed this restricted appeal of the
post-answer default judgment.








A direct attack on a judgment by
restricted appeal must (1) be brought within six months after the trial court
signs the judgment, (2) by a party to the suit, (3) who did not participate in
the actual trial, and (4) the error complained of must be apparent on the face
of the record.  Tex. R. App. P. 30. 
The scope of review in a restricted appeal is the same as an ordinary
appealCreview of the
entire case, except that the error must appear on the face of the record.  Norman Commc=n v. Tex. Eastman
Co.,
955 S.W.2d 269, 270 (Tex. 1997) (per curiam). 
For purposes of a restricted appeal, the face of the record consists of
all papers on file before the judgment, including the reporter=s record.  Id. 
Neither party contests that Piper has met the first three requirements
for bringing a restricted appeal.  The
only question, therefore, is whether there is error apparent on the face of the
record.

Mediation

Piper asks this Court to reverse and
remand because Edwards failed to appear at mediation.  Piper relies on a written notice sent by the
trial court that warns it will dismiss a party=s claims on the
first day of the week the case is set for trial if that party fails to attend
mediation.  Piper argues Edwards failed
to appear and, relying on the court=s notice, Piper
assumed the court would simply dismiss Edwards= claims.  Piper, however, points to no error apparent
on the face of the record.[3]  We find his argument is beyond the scope of
this restricted appeal, and we overrule his first issue.

Legal
and Factual Sufficiency of the Evidence








Piper argues is
there is legally and factually insufficient evidence to show breach of
contract, conversion, or fraud.  In
reviewing a legal insufficiency claim, we consider only the evidence and
inferences tending to support the judgment and disregard all evidence and inferences
to the contrary.  Wal‑Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998).  If there is more than a scintilla of evidence
to support the findings, the no‑evidence challenge cannot be
sustained.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994). 
Evidence is legally sufficient when it rises to a level that would
enable reasonable and fair‑minded people to differ in their
conclusions.  Mobil Oil Corp. v.
Ellender, 968 S.W.2d 917, 922 (Tex. 1998). 
In reviewing a factual sufficiency challenge, we examine the evidence
and reverse only if the finding is against the great weight and preponderance
of the evidence.  Jackson v. Gutierrez,
77 S.W.3d 898, 902 (Tex. App.CHouston [14th
Dist.] 2002, no pet.). 

Breach of Contract

The elements of a breach of contract claim
are:  (1) the existence of a valid
contract;  (2) performance or tendered
performance by the plaintiff;  (3) breach
of the contract by the defendant;  and
(4) damages to the plaintiff resulting from that breach.  Frost Nat=l Bank v. Burge, 29 S.W.3d 580,
593 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  Piper and Edwards agree they had a valid
contract; however, Piper denies there is sufficient evidence to show Edwards= performance,
Piper=s breach, or
damages.

Piper argues the contract obligated
Edwards to perform repairs on the Chevelle before any swap was to occur, and
because Edwards admitted at trial that he completed only Asome@ of these repairs,
he did not prove full or substantial performance of his contractual obligations
and, therefore, could not sue on the contract. 
In construing a contract, we must ascertain and give effect to the
parties= intentions as
expressed in the document.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  We Awill avoid . . . a
construction which is unreasonable, inequitable, and oppressive.@  Reilly v. Rangers Mgmt., Inc., 727
S.W.2d 527, 530 (Tex. 1987).

There are two contract terms describing
the work Edwards will perform.  The first
lists the repairs for which Edwards is Aresponsible.@  It follows a list of work Piper promises to
complete on the Chevelle prior to delivery. 
This provision merely explains which work Piper need not complete
by defining the work that is left to Edwards; it does not obligate Edwards to
complete certain repairs before Piper=s obligation
becomes due.








The second term provides that Edwards will
assist Piper Ain some minor capacity@ in the assembly
and detail work on the Chevelle Aas time permits.@  Had the parties wished to make Edwards= assistance a
condition of contract completion, they could have drafted it into the contract,
as they did with Piper=s repair of the Chevelle.  This second provision does not create a
condition precedent upon Edwards that must be performed before Piper=s performance
becomes due, and we will not endorse such an unreasonable interpretation.[4]

The contract specified Piper must complete
work on the Chevelle Ain a timely manner.@  Piper argues Edwards failed to prove what a
reasonable time would be under the contract. 
Determining whether a contract was performed within a Areasonable time@ depends on the circumstances
in each case, and requires a finding by the trier of fact. Continental
Casing Corp. v. Siderca Corp., 38 S.W.3d 782, 789 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  The record shows
approximately sixteen months passed between when the contract was made and when
Edwards filed suit.  During that time,
Edwards asked Piper on several occasions when the car would be ready and was
consistently met with a standard answer that the body shop had Astarted on it.@  Piper asserts that, because the shop was
still working on the Chevelle, Edwards could not have filed suit.  As it is, Piper was given almost
one-and-a-half years to perform.  Because
the trial court did not issue findings of fact, we presume it resolved all
factual disputes in favor of its judgment. 
American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801,
806 (Tex. 2002).  We presume the trial
court viewed the period between contract formation and filing suit as providing
more than a reasonable time for Piper=s
performance.  This evidence is more than
a scintilla and, as there is no evidence to the contrary, the court=s fact finding on
this record is not against the great weight and preponderance of the evidence.








Piper contends that Edwards presented no
evidence of breach.  Piper claims he was Aessentially@ responsible for
painting the Chevelle and that Edwards never testified Piper breached this
obligation.  Piper=s argument is
flawed, as the contract explicitly required him to swap his vehicle after
completing a laundry list of work. 
Edwards presented more than a scintilla of undisputed evidence that
Piper did not complete this work, and never delivered the car to Edwards.  Piper=s failure to
complete a condition of deliveryCto complete
repairs in a timely mannerCand the resulting
failure to deliver the car breached the contract.  Piper=s claim on this
basis is overruled.








Piper finally challenges Edwards= injury by
attacking evidence of the Chevelle=s value.  Although the record contains evidence that Edwards suffered
damage, the only evidence supporting an award of $100,000 is the testimony of
Edwards= proffered expert, Edward Galen (AGalen@). 
Galen stated he is not an expert on Chevelles but he has been Amessing with them for over twenty
years.@ 
There is no evidence Galen ever saw the Chevelle in question or understood in
what condition Piper agreed to deliver it. 
He testified only
that Athat one there@ has a value between $95,000 and
$100,000 because it is rareC1970 is the only year the car was made with a 454‑LS6
V8 engine.[5]
 Galen=s testimony
amounts to no evidence of Edwards= damages, and we
find the trial court erred in relying upon it. 
The only remaining evidence regarding actual damage is Edwards= testimony and the
NADA online classic car pricing guide, which lists the Chevelle=s value from
$25,470 at a low retail value to $95,220 at the high end.[6]  Edwards= testimony and the
underlying contract establish Piper was not supposed to deliver the car in a Acompletely
finished@ condition because
he was not responsible for completing all repair work.[7]  While there is evidence of actual damage,
there is legally insufficient evidence to support an award of $100,000.  We reverse the actual damages award and
remand to the trial court to determine the appropriate amount of actual damages
and the attorney fees, if any, based on those damages.

Conversion, Quantum Meruit, and Promissory
Estoppel

Piper argues Edwards failed to prove Piper
converted the car parts listed in the trial court=s turnover
order.  The elements of conversion
require a plaintiff to prove: (1) he owned, had legal possession of, or was
entitled to possession of the property; (2) the defendant assumed and exercised
dominion and control over the property in an unlawful and unauthorized manner
to the exclusion of and inconsistent with the plaintiff=s rights; (3) the
plaintiff made a demand for the property; and (4) the defendant refused to
return the property.  Ojeda v. Wal‑Mart
Stores, Inc., 956 S.W.2d 704, 707 (Tex. App.CSan Antonio 1997,
pet. denied).  A plaintiff must demand
return of the property if the defendant legally obtained possession.  Presley v. Cooper, 155 Tex. 168, 284
S.W.2d 138, 141 (1955).  Testimony at
trial established only that (1) Edwards gave car parts appraised at $29,850 to
Piper, (2) giving Piper the parts was not part of the original contract, (3)
Edwards gave Piper the parts because Piper Akind of insisted
on it@ and Edwards Awas trying to
motivate [Piper] to go and finish the [Chevelle],@ and (4) Edwards
wants the car parts back.  Edwards
presented no evidence that he ever demanded the return of the parts, and does
not allege he made a demand.  We find
this evidence is legally insufficient to support the court=s turnover order
based on conversion.

Edwards also pled for recovery under
quantum meruit and promissory estoppel theories.  Piper does not challenge the trial court=s judgment on
either of these grounds.  Because the
trial court did not state the grounds for its judgment, we must determine
whether the auto parts were properly ordered turned over to Edwards on either
of these theories.








Quantum meruit is an equitable theory of
recovery based on an implied agreement to pay for benefits received.  Heldenfels Bros., Inc. v. City of Corpus
Christi, 832 S.W.2d 39, 41 (Tex. 1992). 
To recover under quantum meruit, Edwards must establish (1) valuable
materials were furnished, (2) to Piper, (3) which he accepted (4) under such
circumstances as reasonably notified him that Edwards, in performing, expected
to be paid by Piper.  Id.  A party may recover under quantum meruit only
when there is no express contract covering the services or materials furnished.  Vortt Exploration Co. v. Chevron U.S.A.,
Inc., 787 S.W.2d 942, 944 (Tex. 1990). 
Edwards acknowledges there is no contract regarding the exchange of the
auto parts.  His testimony showed
delivery of valuable materials to Piper and that Piper accepted those
parts.  Edwards testified Piper Akind of insisted@ on receiving the
parts, and that Edwards acquiesced by delivering them because he Awas trying to
motivate@ Piper to finish
work on the Chevelle.  We do not find
this testimony is more than a scintilla of evidence that Piper was reasonably
notified Edwards expected to be Apaid@ for the car
parts.  

AThe requisites of
promissory estoppel are:  (1) a promise,
(2) foreseeability of reliance thereon by the promisor, and (3) substantial
reliance by the promisee to his detriment.@  English v. Fischer, 660 S.W.2d 521,
524 (Tex. 1983).  Edwards attempted to
show Piper promised he would finish work on the car if Edwards would only
deliver the valuable car parts.  The
record, however, shows no such promise made by Piper, and so the trial court
could not have rested its turnover order upon this ground.

The turnover order could not be founded on
any theory Edwards pled or proved in this record.  We, therefore, find error apparent on the
face of the record and reverse the trial court=s judgment as to
the turnover order.

Fraud








In his fraud claim, Edwards alleges Piper
never intended to honor the agreement, and he tried to pass after-market parts
off as original Chevelle parts.  To
recover for fraud, a party must prove: (1) a material representation was made,
(2) the representation was false, (3) when the speaker made the representation,
he knew it was false or made it recklessly without knowledge of the truth as a
positive assertion, (4) the speaker made it with the intention that it should
be acted upon by the party, (5) the party acted in reliance upon it, and (6)
the party thereby suffered injury. Johnson & Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998).  

Edwards testified that Piper, after
telling Edwards he had an original engine block, later stated he did not have
the original part but that he could grind out the serial numbers on a
replacement part and stamp it to make the part appear to be an original.  The contract only states that Piper will
provide a Arebuilt motor@ and makes no
mention of an original engine block.  The
record does not show whether Piper made this representation to Edwards before
or after the contract was made.  We can
only guess whether this statement induced Edwards to enter into the contract
with Piper, or whether it was part of post-contractual discussions.  We, therefore, have no evidence of Edwards= reliance on Piper=s representation.

There is scant evidence Piper did not
intend to honor the contract when he entered into it, including his failure to
complete performance for sixteen months. 
As a general rule, the failure to perform the terms of a contract is a
breach of contract, not a tort.  IKON
Office Solutions, Inc. v. Eifert, 125 S.W.3d 113, 130 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied) (quoting Crim Truck & Tractor Co. v. Navistar
Int=l Transp. Corp., 823 S.W.2d 591,
597 (Tex. 1992), superseded by statute on other grounds as stated in Subaru
of America, Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212 (Tex.
2002)).  An exception to the general rule
arises if a party enters into a contract with no intention of performing; that
misrepresentation may give rise to a claim of fraud.  Id. 
Because intent to deceive or defraud is not susceptible to direct proof,
it invariably must be proven by circumstantial evidence, which must transcend
mere suspicion.  Id. at 124.  Reasoning from circumstantial evidence often
involves linking apparently insignificant and unrelated events to establish a
pattern.  Id.








The trial included testimony about Piper=s prior arrests
for Athievery@ with no resultant
convictions, Edwards= bald statements that Piper falsely
claimed he could not afford to pay a court filing fee, that Piper has numerous
judgments against him arising from Adebt or theft,@ a prior summary
judgment[8]
against Piper Ato show [he is] a bad actor,@ and Edwards= claim that Piper has filed for bankruptcy on
other occasions and had his filings dismissed Ato get other
lawsuits defeated.@  We
find this Aevidence@ insufficient to
show Piper never intended to honor the contract with Edwards.  We hold there is legally insufficient
evidence to support Edwards= fraud claim.  Because Edwards cannot recover any actual
damages for fraud, we must reverse the trial court=s exemplary damage
award of $40,000.  See Fed. Exp. Corp.
v. Dutschmann, 846 S.W.2d 282, 284 (Tex. 1993) (holding there can be no
recovery of punitive damages without a finding of an independent tort with
accompanying actual damages). 

Accordingly, we affirm the trial court=s implied finding
that Piper breached the contract. 
However, we reverse the award of $100,000 in actual damages for the
breach of contract and remand to the trial court to determine the appropriate
amount of actual damages and the attorney fees, if any, based on those
damages.  We also reverse the trial court=s award of any
damages based on Edward=s claims for conversion, quantum meruit,
promissory estoppel, and fraud, and render judgment that Edwards take nothing
on those claims.  Finally, we reverse the
trial court=s turnover order, and render judgment that
Edwards take nothing on his request for a turnover order.

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment
rendered and Corrected Memorandum Opinion filed March 9, 2006.

Panel
consists of Justices Hudson, Frost, and Seymore.











[1]  The Chevelle
was to be repainted and have a rebuilt motor and transmission, reconditioned
front suspension, wheels, tires, and rear axle. 
Edwards remained responsible for the interior work and detail including
carpeting, seat covers, trim, the exhaust system, shocks, trunk and engine
compartment detail, rechroming the bumpers, and painting the wheels.





[2]  Edwards added
the fraud claim ten days before trial in his third amended petition, where he
also increased the amount prayed for by almost $100,000 and asked for the
jurisdictional cap on exemplary damages. 
Piper did not object to the amendment, and now alleges the trial court
erred by accepting it because it operated as a surprise.  Edwards did not need leave of court to file
this timely amendment.  See Tex. R. Civ. P. 63 (providing that
amended pleadings may be filed within 7 days of trial and thereafter with leave
of the trial court); Food Source, Inc. v. Zurich Ins. Co., 751 S.W.2d
596, 599 (Tex. App.CDallas 1988, writ denied) (same).   Even when an amendment is timely, it is
prejudicial on its face if it asserts a new cause of action.  Smith v. Heard, 980 S.W.2d 693, 698
(Tex. App.CSan Antonio 1998, pet. denied).  Therefore, if the opposing party objects, the
trial court may, in its discretion, refuse to allow it.  Id. 
Piper never objected, and there is no error in the trial court=s acceptance of this petition.  See Greenhalgh v. Service Lloyds Ins. Co.,
787 S.W.2d 938, 939 (Tex. 1990) (explaining trial court has no discretion to
refuse amendment unless it asserts a new cause of action or defense and
the opposing party objects).





[3]  Both parties
attached post-trial affidavits to their appellate briefs to evidence their arguments about
whether mediation occurred.  We will not
consider these affidavits on this restricted appeal.  See Norman Commc=n, 955 S.W.2d at 270 (affirming holding that
affidavit attached to appellate brief did not satisfy restricted appeal
requirement that error be apparent on face of record).





[4]    See
Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 507 (Tex. 2001) (defining
condition precedent as "an event that must happen or be performed before a
right can accrue to enforce an obligation"); see also Hohenberg Bros.
Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976)
(finding  conditions are disfavored in
the law and when a condition imposes an absurd or impossible result the
agreement is to be interpreted as creating a covenant rather than imposing a
condition).  Edwards need not have shown
that he completed either of these tasks before filing suit.





[5]  The record
does not show to what Galen was referring, whether it was the National Automobile Dealers Association=s (ANADA@) online classic car pricing guide printout already offered into evidence, or to some
other document or article.





[6]  Piper alleges this report is inadmissible
hearsay.  Hearsay evidence must be
objected to when it is admittedCthis is true in contested proceedings or proceedings upon
default judgment.  Tex. R. Evid. 802;  Tex. Commerce Bank, Nat=l. Ass=n v. New, 3 S.W.3d 515, 517 (Tex. 1999)
(per curiam).  Piper failed to appear
and, therefore, to object; he cannot successfully make this argument now, on
appeal.





[7]  When asked whether Piper was supposed to deliver the Chevelle in a Acompletely restored condition,@ Edwards replied A[t]he body was supposed to be
painted, finished on the outside.  I was
supposed to do some of the inside work, which I=ve already done some of that.@  Edwards
also testified that, at the time of the contract, he believed his unfinished
1964 Dodge (Ait was in parts and not right@) was an Aeven
swap@ for the 1970 Chevelle as delivered Ain a finished condition.@  This evidence is insufficient to trigger NADA high-end
valuation.





[8]  The summary
judgment issued does not identify the underlying claim or claims prevailed
upon.